**REVERSED AND RENDERED and Opinion Filed August 28, 2019**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

**No. 05-19-00541-CV**

## IN THE BEST INTEREST AND PROTECTION OF J.A., A MINOR CHILD

**On Appeal from the County Court at Law No. 2**
**Kaufman County, Texas**
**Trial Court Cause No. 19M-091**

# MEMORANDUM OPINION

Before Chief Justice Burns and Justices Molberg and Nowell
Opinion by Chief Justice Burns

J.A. appeals from a judgment committing her to temporary inpatient mental health services. Appellant contends her medical records should not have been included in the clerk's record, the health and safety code prohibits the involuntary commitment of minors, she received ineffective assistance of counsel, a recommendation for treatment was not filed, the two medical certificates on file did not comply with the requirements of the health and safety code, and the trial court's findings are not supported by legally and factually sufficient evidence. We reverse and render.

### BACKGROUND

Appellant is a fourteen-year-old female with a history of psychiatric issues. During a Child Protective Services case, Lou Autrey, appellant's great aunt, was appointed as appellant's sole managing conservator. On June 25, 2017, Autry voluntarily admitted appellant to Terrell State Hospital (TSH). Appellant was discharged from TSH briefly, but then Autry readmitted her on August 11, 2018 after she was aggressive toward Autry and appellant's sister. During the brief

time she was home, appellant was allegedly sexually assaulted by her brother. During her second stay at TSH, her treating psychiatrist, Dr. Poul Sobin, diagnosed her with disruptive mood dysregulation disorder (DMDD). On September 10, 2018, TSH discharged appellant and she was admitted to the Waco Center for Youth. Appellant was transferred back to TSH on January 11, 2019, after she allegedly assaulted a staff member at the Waco center. An agreed order was entered to administer psychoactive medication during her commitment.

On April 29, 2019, the current application for court-ordered temporary mental health services was filed seeking to commit appellant to TSH for ninety days. The application was supported by the medical certificates of appellant's new treating psychiatrist, Dr. Mohammed El-Awady, and Dr. Sobin. Autrey supported the treatment plan that involved appellant's involuntary admission.

On May 2, 2019, the trial court conducted a commitment hearing. El-Awady testified as the State's sole witness. El-Awady testified appellant was suffering from DMDD and has additional symptoms indicative of bipolar disorder, post-traumatic stress disorder, and conduct disorder. He testified DMDD causes appellant to have "mood swings, anger outbursts, usually out of proportion to any provocative kind of indictment. She continues to have anger mood in between these episodes. It's been chronic. It's been lasting for at least years." El-Awady testified about three specific incidents in which appellant had engaged in disruptive behavior. El-Awady's testimony would establish the necessary predicate for involuntary admission.

The defense called Sobin, social worker Shannon Jordan, Autrey, and appellant to testify. Sobin testified appellant's incidents were mostly oppositional rather than violent and opined appellant was not a suicide risk. Jordan testified appellant has periods where she does well and episodes where she becomes aggressive to others or to objects. Jordan testified there had been

–2–

discussions in appellant's previous stint in TSH about ways to do less restrictive treatment for appellant in the Waco Center for Youth, but current discussions were only about treatment in TSH.

Autrey testified she is the conservator who has the right to make medical and psychological decisions for appellant. She testified appellant has been "in and out" of TSH since June 2017 and she readmitted appellant in August 2018 because appellant had been aggressive toward her and toward appellant's sister. Autrey's understanding was that appellant was going to be sent to a treatment program in Wichita Falls and that "Wichita Falls" did not take patients who had been voluntarily admitted. Autrey denied that appellant had a lesser restrictive option or that appellant could receive care on an outpatient basis, explaining appellant had been placed at Andrew's Center in Canton but she had refused to participate in the program or follow instructions. Eventually, Autrey wants appellant to be able to rejoin the family. Appellant took the stand briefly, but did not testify after the trial court refused to hear testimony about the incident with her brother.

After hearing the testimony, the trial court ordered appellant be committed for inpatient treatment at TSH for ninety days. As part of its order, the trial court found appellant is mentally ill and as a result of her mental illness, appellant is likely to cause serious harm to herself and to others; she will, if not treated, continue to suffer severe and abnormal mental, emotional, or physical distress; she will continue to experience deterioration of her ability to function independently; and she is unable to make a rational and informed decision as to whether or not to submit to treatment. On June 17, 2019, while this appeal was pending, the trial court signed an order for TSH to transfer appellant to a maximum security unit at "Vernon State Hospital."[1]

---

[1] The Court takes judicial notice that North Texas State Hospital maintains three campuses, two of which are in Vernon, Texas and another of which is in Wichita Falls, Texas. *See* https://hhs.texas.gov/services/mental-health-substance-use/state-hospitals/north-texas-state-hospital.

**ANALYSIS**

In her brief, appellant objects to the use of her medical records, raises five "jurisdictional and constitutional arguments," and raises four appellate issues. Because her argument that the trial court lacked jurisdiction to involuntarily commit her is conclusive, we will address that issue.

Appellant contends the trial court lacked jurisdiction over her because the Texas Health and Safety Code prohibits the involuntary commitment of minors. Appellant contends there is no authority under chapter 572 of the code that would allow her involuntary commitment.

Although Chapter 572 is entitled "Voluntary Mental Health Services," it provides for a mix of voluntary and involuntary admissions depending upon a person's age and who is entitled to make decisions for them. *See* TEX. HEALTH & SAFETY CODE ANN. § 572.001. Under section 572.001(a), a person sixteen years of age or older may request admission to an inpatient mental health facility. *See id.* § 572.001(a). For persons under eighteen years of age, however, the statute also provides for their commitment even without their consent:

> The parent, managing conservator, or guardian of a person younger than 18 years of age may request the admission of the person to an inpatient mental health facility or for outpatient mental health services by filing a request with the administrator of the facility where admission or outpatient treatment is requested.

*Id.* For those persons between sixteen and eighteen years of age, who would be allowed to admit themselves to treatment voluntarily, the code allows a parent to admit that person even if they do not consent to the admission. *Id.* § 572.001(a-1).

When a minor's guardian or managing conservator is a government official or government agency, section 572.001(c) requires a more exacting process to admit a minor to mental health treatment:

> A person or agency appointed as the guardian or a managing conservator of a person younger than 18 years of age and acting as an employee or agent of the state or a political subdivision of the state may request admission of a person younger than 18 years of age to an inpatient mental health facility only as provided by

–4–

Subsection (c-2) or pursuant to an application for court-ordered mental health services or emergency detention or an order for protective custody.

TEX. HEALTH & SAFETY CODE ANN. § 572.001(c).

Subsection 572.001(c-2) provides:

The Department of Family and Protective Services may request the admission to an inpatient mental health facility of a minor in the managing conservatorship of that department only if a physician states the physician's opinion, and the detailed reasons for that opinion, that the minor is a person:

(1) with mental illness or who demonstrates symptoms of a serious emotional disorder; and

(2) who presents a risk of serious harm to self or others if not immediately restrained or hospitalized.

TEX. HEALTH & SAFETY CODE ANN. § 572.001(c-2).

If, instead of pursuing commitment under subsection (c-2), the state official decides to pursue involuntary commitment, the criteria for committing a proposed patient for court-ordered temporary inpatient mental health services is set forth in section 574.034(a) of the health and safety code::

The judge may order a proposed patient to receive court-ordered temporary inpatient mental health services only if the judge or jury finds, from clear and convincing evidence, that:

(1) the proposed patient is a person with mental illness; and

(2) as a result of that mental illness the proposed patient:

(A) is likely to cause serious harm to the proposed patient;
(B) is likely to cause serious harm to others; or
(C) is:
(i) suffering severe and abnormal mental, emotional, or physical distress;
(ii) experiencing substantial mental or physical deterioration of the proposed patient's ability to function independently, which is exhibited by the proposed patient's inability, except for reasons of indigence, to provide for the proposed patient's basic needs, including food, clothing, health, or safety; and
(iii) unable to make a rational and informed decision as to whether or not to submit to treatment.

Tex. Health & Safety Code Ann. § 574.034(a).

Thus, section 572.001 provides parents, guardians, and conservators with broad discretion to make voluntary treatment decisions for a minor and a more carefully scrutinized set of powers for government officials to make treatment decisions for certain minors, including the power to request involuntary commitment. The statute then limits the power of other actors to make involuntary treatment decisions for minors. Subsection 572.001(c-1) provides "A person younger than 18 years of age may not be involuntarily committed unless provided by this chapter, other state law, or department rule." *See id*. § 572.001(c-1). As "other state law," chapter 55 of the family code provides a procedure under which the juvenile court, or a court to which the juvenile court has referred a child's case, may use the procedures of chapter 574 to commit a juvenile for involuntary mental health treatment. *See* Tex. Fam. Code Ann. § 55.01 *et seq*.

Appellant contends that because neither chapter 572 nor any other state law provides for appellant's involuntary commitment, the trial court lacked jurisdiction to order appellant's commitment. Appellant points out that a pending change to section 572.001 (c-1), effective September 1, 2019, clarifies the legislature's intent that a minor may not be involuntarily committed unless provided by either a department rule or under chapter 55 of the family code. *See* Act of May 23, 2019, 86th Leg., R.S., ch. 988, § 2, 2019 Tex. Sess. Law Serv. (to be codified at Tex. Health & Safety Code Ann. § 572.001(c-1)). [2]

The State contends that "other state law," namely, health and safety code section 574.034, authorizes the involuntary commitment of a "person with mental illness" for involuntary treatment. *See* § 574.034(a)(1). The definitions of both "patient" and "person" in the code do not expressly exclude minors. *See* Tex. Health & Safety Code Ann. § 571.003(16–17). The State points out

---

[2] The new version of subsection (c-1) will read: "A person younger than 18 years of age may not be involuntarily committed unless provided by this chapter, Chapter 55, Family Code, or department rule."

subsection 574.001(f) addresses the matter of venue for an "application in which the proposed patient is a child in the custody of the Texas Juvenile Justice Department. . . ." *See* TEX. HEALTH & SAFETY CODE ANN. § 574.001(f). The State contends this reference to minors indicates that section 574.034 may be used to involuntarily commit minors generally. The State further points out that the Texas Human Resources Code also directs a juvenile board or juvenile probation department to file section 574 petitions for mentally ill minors in the custody of juvenile authorities. *See* TEX. HUM. RES. CODE ANN. § 152.00164.

The State cites two cases in which it contends minors were involuntarily committed for mental health care. *See In re State ex rel. L.E.H.*, 228 S.W.3d 219 (Tex. App.—San Antonio 2007, no pet.); *In re K.S.*, No. 02-03-00295-CV, 2004 WL 254267 (Tex. App.—Fort Worth Feb. 12, 2004, no pet.) (mem. op.). Finally, the State notes that the legislature revised section 574.034 in its last regular session and the revision, effective September 1, 2019, does not change the language of section 574.034(a)(1) to specifically exclude minors from the definition of "person with mental illness." *See* Act of May 21, 2019, 86th Leg., R.S., ch. 582, §§ 10-11, 2019 Tex. Sess. Law Serv. (to be codified at TEX. HEALTH & SAFETY CODE ANN. § 572.034)).

In analyzing how chapters 572 and 574 fit together, we are bound to follow the Code Construction Act. *See* TEX. HEALTH & SAFETY CODE ANN. § 1.002 ("Chapter 311, Government Code (Code Construction Act) applies to the construction of each provision of this code except as otherwise expressly provided by this code.)." Under the Code Construction Act, when a general statutory provision conflicts with a more specific provision, the provisions must be construed so as to give effect to both. *See* TEX. GOV'T CODE ANN. § 311.026(a).

In this case, section 574.034 generally allows the courts to order the commitment of persons with mental illness. However, a more specific provision, section 572.001, draws narrow limits on the ability to commit a minor involuntarily for treatment, limiting involuntary

commitments to cases where a child has been placed into the custody of government officials. Section 572.001(c-1) does provide that "other state law" can authorize involuntary commitments. If, however, we interpret section 574.034 so broadly that it allows the courts to entertain the involuntary commitment of any child, then it renders section 572.001's limitations on the involuntary commitment of minors ineffectual. The State would be able to commit any child without regard to the wishes of the child's parents or guardian. The fact that section 574.001 mentions minors only in connection with establishing venue for cases involving juveniles in the custody of the Texas Juvenile Justice Department reinforces our understanding that minors are only subject to involuntary commitments under a very specific set of circumstances. Likewise, the other statute the State cites, section 152.00164 of the human resources code, provides for involuntary commitments under section 574 only for children "in the custody of the juvenile board or local juvenile probation department." *See* TEX. HUM. RES. CODE ANN. § 152.00164. Accordingly, we conclude that "persons with a mental illness" subject to involuntary commitment under section 574.034 does not include minors unless the minor is either a juvenile within the custody of juvenile justice authorities or else the Department of Family and Protective Services has been appointed as the child's guardian or managing conservator.

We agree with the State that the pending statutory amendment striking the phrase "other state law" from subsection 572.001(c-1) and replacing it with "Chapter 55, Family Code" does not control the outcome of this case. *See* TEX. GOV'T CODE ANN. § 311.022 ("A statute is presumed to be prospective in its operation unless expressly made retrospective."). Nevertheless, we conclude this legislative clarification only makes formal what is already apparent from a reading of the existing statutes.

Turning to the State's case law authorities, the issue in *L.E.H.* involved whether an appointed attorney could file an *Anders* brief when he or she concluded an appeal of an involuntary

mental health commitment order was frivolous. *See L.E.H.*, 228 S.W.3d at 220. In reaching this conclusion, the court of appeals cited, among other authorities, *In re D.A.S.*, 973 S.W.2d 296, 299 (Tex. 1998), a case in which the supreme court extended *Anders* procedures to appeals from civil juvenile delinquency adjudications. *See id.* Nothing in *L.E.H.* shows definitively that the subject of the appeal was a minor. *See L.E.H.*, 228 S.W.3d at 220–21. None of the other cases cited in the *L.E.H.* opinion involve minors. *See id.* Because nothing in the *L.E.H.* opinion shows the subject of the case was a minor, *L.E.H.* does not support the State's position.

In the State's other cited authority, *K.S.*, a juvenile appealed a trial court judgment temporarily committing him to a state hospital to receive mental health services. *See K.S.*, 2004 WL 254267, at *1. The appellate court did not address the jurisdictional facts of the case. We note, however, that K.S. was described as a "juvenile" rather than as a child or minor, that the facts justifying his commitment included allegations that he had taken his brother's car without permission, he used the car to try to run over his brother and sister, and the police had been called to the scene to restrain him. *Id.* The opinion does state that appellant's treating psychiatrist opined K.S. "seemed angry with his sister and family because they were involved in returning him to the hospital." *Id.* It is not clear, however, from the opinion whether K.S. was in the custody of the juvenile justice system or whether a family member was still authorized to make a decision about treatment for him. Because the *K.S.* opinion contains limited facts and does not reveal how K.S. ended up in court contesting an application for court-ordered mental health services, we cannot conclude *K.S.* supports the State's argument.

CONCLUSION

Section 572.001 invests in Autry, appellant's managing conservator, the power to voluntarily commit appellant to mental health treatment. Unless and until appellant is adjudicated into the juvenile justice system or guardianship over her is transferred to the Department of Family

–9–

and Protective Services, there is no statutory authority that would allow the trial court to enter a judgement committing appellant to involuntary court-ordered mental health services.

We reverse the trial court's judgment ordering J.A. committed for court-ordered temporary mental health services, and we render judgment denying the State's application for court-ordered temporary mental health services.


/Robert D. Burns, III/
ROBERT D. BURNS, III
CHIEF JUSTICE

190541F.P05



## Court of Appeals
## Fifth District of Texas at Dallas

# JUDGMENT

IN THE BEST INTEREST AND
PROTECTION OF J.A., A MINOR
CHILD

No. 05-19-00541-CV

On Appeal from the County Court at Law
No. 2, Kaufman County, Texas
Trial Court Cause No. 19M-091.
Opinion delivered by Chief Justice Burns,
Justices Molberg and Nowell participating.

In accordance with this Court's opinion of this date, the judgment of the trial court is **REVERSED** and judgment is **RENDERED** that the State's application for court-ordered temporary mental health services is denied.

Judgment entered August 28, 2019.